1817.

HAMILTON *against* CADWALADER and others who survived WILLIAMS.

*Philadelphia.*

## CASE STATED.

Saturday,
December 29.

*James Hamilton*, was seised in fee, in his life-time, of two undivided third parts, and *Andrew Hamilton*, of one undivided third part of a tract of land, adjoining the city of *Philadelphia*, known by the name of *Bushhill*, which they held as tenants in common.

On the 7th *April*, 1814, they entered into a contract with *Thomas Cadwalader*, *Thomas Biddle*, *Archibald M'Call*, *Samuel Richards*, *John Wharton*, and *Jonathan Williams*, who was then alive, relating to said lands, which contained covenants for the payment of certain annual sums of money, to the said *James Hamilton* and *Andrew Hamilton*. *Jonathan Williams*, afterwards died. In *July*, 1817, *James Hamilton* died intestate, unmarried, and without issue, leaving, as his heirs at law, *Mary Hamilton*, and five others. One quarterly payment of the money contracted to be paid by the defendants, had become due, since the death of *James Hamilton*, and they were willing to make payment of the same, but were uncertain to whom it should be made.

The question submitted to the Court was, to whom so much of the said payment, as would have been made to the said *James Hamilton*, if living, was to be made. Whether to *Andrew*, who survived *James;* to *James Lyle*, administrator of *James Hamilton*, deceased, or to the respective heirs of *James Hamilton*.

The articles of agreement upon which this question arose, were entered into by the said *James Hamilton* and *Andrew Hamilton*, with the defendants, on the 7th *April*, 1814. They agreed to convey to the defendants, on ground rent, the *Bushhill* estate, containing 153 acres and 148 perches, and a

A, and B, seised of land in fee, as tenants in common, two thirds belonging to A, and one third to B, agreed to sell it to the defendants, securing an annuity charged on the land, and constituted one of the defendants their attorney, to sell parcels of the land, in the names of A, and B, reserving ground rents payable to A, and B, and their heirs, as tenants in common, and when sufficient was sold to produce the amount of the annuity, A, and B, were to convey the residue of the land to the defendants, in the mean time, the defendants to pay the annuity; but in case sufficient was not sold in 15 years, A, and B, were to sell on ground rents themselves, sufficient to produce the annuity, and then convey the residue to the defendants; the defendants to be in all events, responsible for the annuity, till secured out of the land; *held*, that this annuity was descendable to the heirs of A, and B, according to their interests in the land, and did not on A's death, survive to B, nor go to A's administrator; though there was a covenant by the defendants with A, and B, and their heirs, to pay the annuity to them and their heirs, for the premises, and also, that nothing in the agreement contained, should prejudice the right of the said A, and B, their administrators, and assigns, to sue the defendants for any breaches of covenant; for these covenants descend to the heirs, and not to the survivor or administrator.

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

square of ground in the neighbourhood, containing 5 acres. They covenanted, to constitute *Thomas Cadwalader*, (or in case of his death or disability, some other person,) their joint and several attorney, to take possession of the premises, and convey the same or any part thereof, on ground rent for ever, reserving said rents to the said *James* and *Andrew*, under certain clauses and covenants, for securing the same to them, to be contained in the deeds of the said attorney. One of which was, that they were to be reserved to the said *James* and *Andrew*, *as tenants in common*. They also covenanted to accept all such conveyances, made in conformity with the stipulations prescribed, in part payment, and satisfaction of the annuity, therein after covenanted to be paid ; and when such ground rents should equal in amount the whole annuity, and no arrears thereof remained unpaid, it should be taken to be extinguished, and the defendants exonerated therefrom ; and that the said *James* and *Andrew*, would convey the residue to the defendants in fee, clear of all incumbrance, as tenants in common ; provided, that this should not take place, till buildings of brick or stone should be erected. The deed then contained the following covenant.

" And the said *Thomas Cadwalader*, &c. for themselves, their heirs, executors, and administrators, in consideration of the agreements, terms, and provisions, hereinbefore contained, do, and each of them doth, covenant, promise, and agree to, and with the said *James Hamilton* and *Andrew Hamilton*, *and their heirs*, that they will well and faithfully pay, to the said *James Hamilton* and *Andrew Hamilton*, *and their heirs*, *for the premises before mentioned and described*, the sums of money hereafter stated, upon the days and times, and in the manner and proportions, hereafter set forth, that is to say, the sum of 9000 dollars, lawful money of the *United States*, in four even and equal quarterly payments, of 2250 dollars each, on the 7th days of *July* and *October*, 1814, and on the 7th days of *January* and *April*, 1815. The sum of 18000 dollars, of like lawful money, in four even and quarterly payments, of 4500 dollars each, on the 7th days of *July*, *October*, *January*, and *April*, succeeding ; the sum of 27000 dollars, of like lawful money, in four even and quarterly payments, of 6750 dollars each, on the 7th days of *July*, *October*, *January*, and *April*, succeeding ; and the sum of 36000

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

dollars, of like lawful money, in four even and quarterly payments, of 9000 dollars each, on the 7th days of *July* and *October*, in the year one thousand eight hundred and seventeen, and the 7th days of *January* and *April*, in the year one thousand eight hundred and eighteen, and on the 7th days of *July*, *October*, *January*, and *April*, thereafter, for every year, free and clear of all taxes, charges, and assessments whatever."

The deed further contained covenants on the part of the said *James* and *Andrew Hamilton*, for the appointment of trustees, to execute powers of attorney, in case of their death, and also when the said annuity should be extinguished, to make conveyance of the residue of the estate to the defendants ; and in default of such appointment, trustees were named in the deed.

Then came the following covenant.

" And it is hereby expressly agreed and declared, by the said *James* and *Andrew*, for themselves and their heirs respectively, that all and singular the covenants on their behalf hereinbefore made, in relation to the land hereinbefore mentioned, the conveyances of the same upon ground rent, the granting and conveying so much as may remain after the annual sum of 36000 dollars, shall have been raised thereout, and the appointment of attornies and trustees for the conveying of the same, in manner herein set forth, shall be deemed, taken, and construed, *to run with the land*, and to attend the same, and be obligatory thereon, into whosesoever hands the same may come, from the said *James* and *Andrew*, whether by descent, devise, gift, sale, or how otherwise soever."

In case default was made in paying the annual sum stipulated, for twelve months, or if at the end of 15 years, sufficient was not conveyed on ground rent, to produce 36000 dollars, as stipulated, then it was agreed, that the said *James* and *Andrew*, might revoke the power or powers of attorney, and other nominations, and convey the whole remaining, or as much as would yield the 36000 dollars ; and whatever remained after that, was to be conveyed to the defendants, with a power of redemption to the defendants, on paying the arrears, in case of a revocation for default of payment.

" Finally, it is understood and agreed by the said parties, that nothing herein contained, shall be deemed or taken, to

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

prejudice the right of the said *James* and *Andrew, their heirs, executors, administrators, or assigns,* to have recourse to law, against the said *Thomas Cadwalader,* &c. or either of them, their or either of their heirs, executors, administrators, and assigns, for any breaches of the covenants herein contained, on their part to be performed, whether in relation to the payment of money or otherwise."

*Tod,* for the plaintiff. The covenant by the defendants to pay the annuity is personal, and does not run with the land. Those covenants that are to run with the land are specified in the deed. The covenants to pay the annuity are joint, and if *James* and *Andrew* were both living they must have brought suit jointly. In *Phillips* v. *Bonsall,*(a) it is decided by this Court, that a covenant by two tenants in common to pay the rent reserved, is a joint covenant notwithstanding their several interest in the land. In *Slingsby*'s case,(b) a covenant by indenture with four and their assigns, *et ad et cum quolibet et qualibet eorum,* that the covenantor was solely and lawfully seised of a rectory, was held to be a joint covenant with the covenantees, and that one could not sue. In *Roll* v. *Yate,*(c) it is held, that if a covenant be made to two, and one dies, the survivor must bring the action. It is well established, that tenants in common have an action jointly; *Co. Litt.* 198. *a.* and if they make a lease the action is in both their names. *Lit.* sect. 316. 1 *Selw. N. P.* 405. 5 *Sm. Laws,* 395.

The nature of this transaction, and the covenants agreed upon, furnish reasons to corroborate the idea, that the covenants are personal. The right of suing is reserved to the heirs, *executors,* and *administrators,* of the covenantees; yet it would be hard to imagine, what the executors were to sue for, unless for the annuity or the arrears of it. But suppose two-thirds to belong to the representatives of *James,* who is to receive it? We say, the administrator.

*Binney,* for the defendants. It is immaterial to the defendants whom they pay, provided they are safe; but we conceive, that it is to the heirs of *James Hamilton* the payment should be made of his share, and not to *Andrew* or the

(a) 2 *Binn.* 138.          (b) 5 *Co.* 18.          (c) *Yelv.* 177.

administrator. *James's* interest in the land was two-thirds; *Andrew's* one-third. The annuity is a compensation for the rents, and is in lieu of them. Both the annuity and rent must follow the nature of the estate the parties had in the land, and cannot be severed from it.

1817.

HAMILTON
*v.*
CADWALADER
and others
who survived
WILLIAMS.

The covenants are to pay to *James* and *Andrew Hamilton* and *their heirs, for the premises.* The word *heirs* was not put in, nor the words *executors* and *administrators* left out by accident. Every word was well considered in these articles. The annuity is in the nature of a rent; a right of re-entry is reserved, in case it is behind twelve months. *Slingsby's* case is not against the position we maintain. The words were there construed joint, because the parties had a joint interest. In *Windham's* case,(a) it is said that the joint words of the parties shall be taken respectively and severally; sometimes in respect of the several interests of the grantors; as if two tenants in common, or several tenants, join in a grant of a rent charge, yet in law this grant shall be several; sometimes in respect of the several interests of the grantees; a warranty made to two, of certain lands, shall enure as several warranties, in respect that they are severally seised, the one of the one part, the other of the residue, in severalty; a joint covenant is taken as several, in respect of the several interests of the covenantees. So if two co-parceners make a feoffment in fee, rendering rent to them and their heirs, the heirs of both shall inherit, because their right in the land was several. *Ibid.* Other cases are there put, and in 3 *Dy.* 337. *b.* So, though the words are several, yet if the interest be joint, the action must be joint. *Eccleston* v. *Clipsham.*(b) The last covenant is relied on by the plaintiff as being personal; but if it were, it would not destroy the preceding ones; and it supposes the right of the heirs to sue on preceding covenants. Possibly a case might exist, in which the executors alone could sue; as if all the land were granted and produced a rent less than 36,000 dollars, for the deficiency the covenant might be considered personal. The administrator has no pretence to sue; the annuity is hereditable in its nature, and is expressly limited to the heirs.

(a) 5 *Co.* 8.  (b) 1 *Saund.* 153.

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

TILGHMAN C. J. In ·this case there are two questions. 1. Whether *Andrew Hamilton*, the survivor of *James Hamilton*, be entitled to receive *the whole* of the sum of 36,000 dollars, agreed by the defendants to be paid to the said *Andrew* and *James*, and their heirs, yearly, by certain articles of agreement referred to in the case stated for the opinion of ·this Court.   2.  If *Andrew Hamilton* be not entitled to receive the *whole*, to whom is the part belonging to the estate of *James*, to be paid ;  to his administrators, or to his heirs ?

It is stated, that the contract on which this action is founded, related to a tract of land, of which *James* and *Andrew Hamilton* were .seised in fee simple as tenants in common, two-thirds belonging to *James*, and one-third to *Andrew*. When the nature of the contract is fully understood, there will be no difficulty in deciding the law.   The object was, to sell the land to the defendants, securing to *James* and *Andrew Hamilton*, 36,000 dollars a-year *charged on the land.* In order to effect this, powers of attorney were to be given by *Andrew* and *James Hamilton* to one of the defendants, authorising him to make sales of separate parcels of land, *in the names of Andrew* and *James Hamilton*, reserving a perpetual ground rent, payable to the said *Andrew* and *James Hamilton*, and *their heirs as tenants in common.*   When as much land was sold, as should produce a yearly rent of 36,000 dollars, secured by brick or stone buildings on each parcel, *Andrew* and *James Hamilton* were to convey the residue of the land to the defendants in fee, as tenants in common, and release them from all demand.   But in the meantime, the defendants were to pay to the said *Andrew* and *James*, and their heirs, the sum of 36,000 dollars a-year. Thus, the legal estate was to remain in *Andrew* and *James Hamilton*, until they were completely secured in an annuity of 36,000 dollars charged on the land.   But in case this should not be completed in the course of 15 years, *Andrew* and *James Hamilton* were to have a right to revoke the ·powers of attorney, and proceed themselves to let out the remainder of the land upon ground rents ; and as soon as they had. secured the yearly sum of 36,000 dollars, they were to convey the residue of the land to the defendants.   But the defendants were in all events to be responsible for the yearly sum of 36,000 dollars, until it was secured, *out of the land*, to *Andrew*

and *James Hamilton*. It appears to me, that this annuity of 36,000 dollars, was considered by all parties in the nature of real estate, descendible to the heirs of *James* and *Andrew Hamilton*, according to their interests in the land, respectively. For, in the first place, the legal estate remained in them, until the annuity was secured; and next, it is to be remarked, that the ground rents were made payable to them and *their heirs, as tenants in common.* And as fast as these ground rents were secured, by brick or stone buildings, the *Hamiltons* were to accept them, in part of the 36,000 dollars, and the responsibility of the defendants ceased *pro tanto.* Now it cannot be conceived, that the annuity was intended to be of one nature, when paid by the defendants, and of another, when paid by the tenants who purchased on ground rent. Had it been said expressly, that the annuity was to be paid as *rent*, I presume there could have been no doubt of its being incident to the reversion, and descendible to the heirs of each. Why then should it not descend, under the expressions which are used—*paying to them and their heirs, for the premises hereinafter described?* What is this but paying *as rent?* Paying an annual sum for the land, must have been intended paying *rent for the land.*

But, whatever may be supposed to have been the general intention of the parties, the plaintiff relies on the *words of the covenant*, which he contends, constitute a *personal* covenant, by which the annuity was payable to himself and *James Hamilton, jointly*, and consequently, that he, being the survivor, is entitled to the whole. The words are these:—" The defend-" ants covenant, promise, and agree, to, and with, the said " *James* and *Andrew Hamilton*, and *their heirs*, that they " will well and faithfully pay to the said *James* and *Andrew* " *Hamilton*, and *their heirs, for the premises before mentioned* " *and described*, the sums of money hereafter stated, &c. &c." The payment *to them* and *their heirs*, is decisive, that the annuity was *intended* to descend to the *heir;* otherwise, the words *executors* and *administrators* would have been used. And if the annuity was to descend to the heirs, it will follow, that although the words of the covenant are *joint*, (*to pay to them* and *their heirs*,) yet they shall be construed as *several*, in order to effect the intent of the parties; *viz.* to secure a payment to each, of a sum proportioned to his interest in the land. That a covenant may descend to *heirs*, when the subject

*[margin: 1817. HAMILTON v. CADWALADER and others who survived WILLIAMS.]*

1817.

HAMILTON
*v.*
CADWALADER
and others
who survived
WILLIAMS.

matter is *land*, and that *joint* words may be construed *seve-rally*, in order to effectuate the intent of the parties, is proved by the case of *Wotton* v. *Cooke. Dyer*, 337. *b*. A. B. & C. holding land as coparceners, and having bought other land, with an intent that one-third should belong to each, they covenanted, each to the others, *et utrique eorum*, (the covenants were in Latin,) and to their heirs and assigns, that in case of death the survivor would make to the heirs of those who died first, such conveyances of one-third part, as should be by them devised, &c. A. & B. died, and the heir of A. brought suit against C. the survivor, for not making him a conveyance of one-third. It was objected, 1st, that the covenant was to *both*, (*utrique*,) and not to *each*, severally. 2d. That the covenant was *personal*, and therefore the executor, and not the heir, was entitled to the action. But, upon both points, the Court decided for the plaintiff. Justice *Windham*'s case, *5 Co. 7*, is strong to shew that the intent of the parties is much regarded in construing covenants, and that this intent is deducible from the nature of the interest of the several parties. In that case, the opinion of the Court is given on several points. 1. *Joint* words are construed *severally*, in respect of the several interests of the *grantors*, as if two tenants in common join in a grant of a *rent charge*, yet, in law, the grant shall be *several*, although the words are *joint*. 2. Joint words are construed severally, in respect of the several interests of the *grantees*. A warranty made *to two*, shall enure as *several warranties*, because they are severally seised, the one of one part of the land, and the other of the residue. 3. If two coparceners make a feoffment in fee, rendering a rent to *them* and *their heirs*, the heirs of *both* shall inherit, because their right in the land was *several*. From the principles established by these cases, it follows, 1. that the law will support the covenant in the case before us, as descendible to the *heirs*, and not the executors of the covenantees. 2. That, although *joint* words are used, yet they shall be construed *severally*, because the interests of the covenantees were several.

But the defendants rely, principally, on another covenant, towards the end of the agreement; by which it appears, as they say, that the *whole* covenants were intended to be *personal*. This covenant is as follows : " Finally, it is understood and agreed, by the said parties, that nothing

herein contained, shall be deemed, or taken, to prejudice the right of the said *James* and *Andrew Hamilton*, their heirs, executors, administrators, or assigns, to have recourse to law, against the said *Thomas Cadwalader*, &c. or either of them, their, or either of their heirs, executors, administrators, and assigns, for any breaches of the covenants herein contained, &c. whether in relation to the payment of money, or otherwise." The object of this covenant, plainly was, to remove all doubts concerning the liability of the defendants for the annuity of 36,000 dollars, until the same was secured by ground rents charged on the land. The word *heirs* is still retained, when speaking of *James* and *Andrew Hamilton,* because that word was necessary, in order to give reference to the former covenant, by which the money was made payable to *them and their heirs.* But to say that because the words *executors and administrators* are also inserted, it shews an intent to destroy the very nature of the principal covenant, and to make the money payable to the *executors, and not to the heirs,* is, in my opinion, to contend for a most forced and unnatural construction, tending to disjoint the whole instrument, and subvert the main intent of *James* and *Andrew Hamilton.* The words, *executors and administrators,* were probably thrown in, from caution, at the end of a long agreement, because some of the preceding covenants might, possibly, have been such as would fall upon the executors or administrators of the covenantees. I should say, then, that they were inserted by way of caution, if no subject could be found, on which they might operate. But a case was put by the defendant's counsel, in which, perhaps, they might operate. Suppose the whole land let out on ground rent, and an annuity less than 36,000 dollars produced. In such case, the defendants would stand responsible for the deficiency; and yet, as there would be no *land,* to which that deficiency could relate, perhaps this covenant might be considered as *personal,* and if so, the *executors, and not the heirs,* of the covenantees must bring suit for a breach of it. At all events, I am very clear, that this last covenant did not alter the nature of the preceding covenants. Upon the whole, it is my opinion, that the covenant for payment of the 36,000 dollars, by the defendants, to *James* and *Andrew Hamilton,* is to be construed *severally,* and descends to the *heirs of each,* according to their several interests in the land.

1817.

HAMILTON
*v.*
CADWALADER
and others
who survived
WILLIAMS.

1817.

HAMILTON
*v.*
CADWALADER
and others
who survived
WILLIAMS.

GIBSON J. gave no opinion, not having heard the argument.

DUNCAN J. The first object of inquiry is, did this arrangement of the estate, convert, *instanter*, the whole of this immense property into rights merely personal; or, did it remain, under its new modification, the real estate of *James* and *Andrew Hamilton*, as tenants in common, in their respective proportions, *James* being entitled to two-thirds, and *Andrew* to one-third. The mind is startled at the idea of the great change. For if such be the effect of this agreement, these consequences would follow: In the event of *James Hamilton* dying intestate, unmarried, and without issue, living his father or mother, the father or mother would have taken all, in exclusion of his brothers and sisters. If he left a wife and no child, she would have had the one half, absolutely; and if this be a joint personal covenant, then the release of one of the covenantees would bind the other. *Fell & Beal* v. *Forma*, 14 *Johns*. 172. This interest, whatever it remained under the agreement, had some fixed character; it was either real or personal; it could be subject to no future change. On this view of the subject, it is difficult to maintain, that it became personal estate. For, as the lots were let on ground rent, the annuity became a ground rent *pro tanto*, and the whole, in the contemplation of the parties, might, eventually, be a ground rent interest, and be restored to its original state, real estate. In this event, the heirs, and not the personal representatives, of *James Hamilton*, would take an inheritable estate. This would be inconsistent totally with personal estate. For, if personal rights merely, and they went to personal representatives, by release, by assignment, the personal representatives might dispose of the whole. In what an unprecedented situation would this property be, till the whole ground interest would be secured? If personalty, in a constant state of diminution, as parts were let out on ground rent, until the whole was converted again into real estate. Such an interest, so variable and floating, the law knows not. As *James Hamilton* held this estate, at the time of his death, it would go over to his personal representatives, or to his heirs at law, in whom it would remain either as real or personal, without fluctuation. It was an event within the view of the parties, that the whole an-

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

nuity would be secured by rents issuing out of the land; for the agreement states, that whenever the ground rents reserved, are equal in amount to the whole annuity, and the arrears are paid, then the covenants entered into by *Thomas Cadwalader* and others, are to be taken as completely satisfied and extinguished. Now as the lots were let out on ground rent by the agent, and the ground rents were to be reserved to *James* and *Andrew Hamilton*, and their heirs, as tenants in common, it is impossible to reconcile this with a construction, that persons other than the heirs, on the death of either, were to receive the proportion of the person dying. I cannot doubt, but that these interests were descendible, let them be considered as corporeal estates, or incorporeal hereditaments, or personal annuities. For it must be constantly kept in view, that the legal estate remained in *James* and *Andrew Hamilton*, and that they were not bound to part with the whole of it in any event, till the whole annuity was secured by satisfactory reservations of ground rents, issuing out of the land, reserved to them and their heirs, as tenants in common, nor to part with the title of any portion of it, unless such proportional reservation of ground rents were made to them and their heirs, as tenants in common. It cannot be supposed, that in a transaction exceeding in point of value, any contract hitherto entered into by individuals in this country, there was a want of circumspection, and when, by the express words of the agreement, the defendants covenanted to pay the annuity to *James* and *Andrew Hamilton*, and their heirs, that had this been intended as a covenant merely personal, the appropriate words of such covenant, *executors* and *administrators*, were omitted by mistake; and when the annuity is made payable to them in reservations of ground rents, to them and their heirs as tenants in common, that executors or administrators were intended. How all this can be reconciled with the construction, that this is not only a personal annuity; but a personal covenant; not only a personal covenant, but a joint one, going to the personal representatives of *James Hamilton*, and the right to bring action, and to receive the money surviving to *Andrew*, I have not been able to discover. The title remaining in *James* and *Andrew Hamilton*, till the completion of the contract, these articles are only executory; and if a bill was filed in a Court of Chancery, by the heirs of *James Hamilton*, to compel the

VOL. III.—3 X

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

specific execution, I am entirely satisfied, that that Court would decree the payments of the proportional part to each of them; and it is equally clear to me, that even in a Court of law, this would be considered as in the nature of an annuity or rent, an incorporeal hereditament savouring of the realty; issuing out of a corporeal one and annexed to it; with all the qualities of an estate in fee simple, inheritable, the subject of entail, husband tenant by the curtesy; wife tenant in dower. If there was any thing wanting to confirm this opinion, my conviction would be riveted by the clause of re-entry, to *James* and *Andrew*, or their heirs or assigns. For, it could not be, that *Andrew* could, as surviving *James*, support covenant for the arrears, including *James's* two-thirds; and that the heirs of *James* could re-enter for the same arrears. Admit for a moment that they were joint-tenants of this incorporeal hereditament, it would seem to me, that the act concerning joint-tenancy, (31st *March*, 1812, 5 *Smith*, 395,) which provides, that " if partition be not made between joint-tenants, " whether they be such as might have been compelled to " make partition or not, or of whatever kind the estates or " thing held or possessed be, the parts of those who die first, " shall not go to the survivor, but shall descend or pass by " devise, and shall be subject to debts, charges, curtesy or " dower, or transmissable to executors or administrators, " and be considered to every other intent and purpose, in the " same manner as if such deceased joint-tenants had been te- " nants in common," operated as a complete severance on the death of *James ;* that these words are sufficiently comprehensive to embrace every estate, whether real or personal. If personal, it is transmitted to the executors or administrators; if real, it descends to the heir, as if such interest had been several. Nor do I find any difficulty respecting real estate, from the word " holden." For the only difference in estates in fee, between the two species of hereditaments, is, that in that of corporeal inheritance, a man shall be said to be seised in his demesne as of fee, and of an incorporeal one, he shall be said to be seised as of fee, and not in his demesne. 2 *Bl. Com.* 104. This rent being reserved to *James* and *Andrew Hamilton*, is a fee; for *fœdum est quod quis tenet sibi et hæredibus suis, sive sit tenementum, sive reditus.* 2 *Bl. Com.* 106. But could *James* and *Andrew Hamilton* be said to be joint-tenants in fee? The estate wants the first property of a joint-tenancy, *unity of interest.* Introduce once the idea

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

of separation, and there is an end of the joint-tenancy. Now, it is not pretended, but that *James Hamilton*, in his lifetime, was entitled to two-thirds of the estate, out of which the rent is to issue, and *Andrew Hamilton*, but to one-third ; and that their interest in the rent remained the same. They then had not one and the same interest. Joint-tenants are said to be seised *per my et per tout ;* by the half or moiety, and by all. Each has an undivided moiety of the whole. The estate thus was of a different nature ; a tenancy in common ; but if a joint-tenancy, the death of *James* severed it; and his two thirds descended to his heirs at law. If this be so, then, most clearly, the action does not survive to *Andrew* to receive *James*'s arrears ; and if the words of this covenant were even joint, the law is settled, in coincidence with the principles of reason and justice, that though a man covenant with two or more jointly, yet if the interest and cause of action of the covenantees be *several* and not joint, the covenant shall be taken for several, and each of the covenantees may bring an action for his particular damage, notwithstanding the words of the covenant are joint. *Eccleston and others* v. *Clipsham*, 1 *Saund.* 153, note 1. But where two persons covenant jointly and severally with another, the covenantee may bring an action against one of the covenantors only, though the interest of the subject matter be joint. It would appear to me, that where the interest of the covenantees is several, such covenants should be moulded according to the several interests of the parties, and each shall only recover for a breach, so far as his own interest extends.

But it is contended, that there is an express personal joint covenant in the last clause ; " finally, it is agreed and under-
" stood by the said parties, that nothing herein contained,
" shall be deemed, construed or taken, to prejudice the right
" of the said *James* and *Andrew*, and their heirs, executors,
" administrators, or assigns, to have recourse to law against
" the said *Thomas Cadwalader*, and the others, or either of
" them, their or either of their heirs, executors, administra-
" tors, and assigns, for any breaches of the covenants herein
" contained, on their part to be done, and performed, whe-
" ther in relation to payment of money or otherwise." This clause was introduced from abundant caution, and certainly was intended to provide for the event of the whole estate not producing a ground rent equal to 36,000 dollars per year. Give

1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

it its utmost extent, it would be only giving *James* and *Andrew* the right of election as in the case of an annuity charged on land, to charge the person of the grantor by writ of annuity, and having made this election and recovered judgment, the land is discharged, and the remedy only personal. Here was no such election by *James Hamilton* or by his heirs. Here is no judgment. In the case of *Bantleon* v. *Smith*, in this Court, the difference is taken between an annuity granted by the proprietor of land, and a case where the grantor grants the land itself, reserving a rent; for there no writ of annuity lies. For it was there held, that the proprietor of such ground rent in fee, who obtains a judgment in covenant for the arrears, and sells the land on a judgment obtained in an action of covenant, is entitled to be paid the whole rent in arrear, out of the proceeds, in preference to older judgments. 2 *Binn.* 146. A perpetual charge on the public revenue in *England*, is considered by the act of 4 and 5 *William & Mary*, as real property; but in subsequent statutes, it is expressly made personal property. Yet without that declaration, it would remain real property. The grants of king *Charles* II. to his natural children, were payable out of the hereditary excise granted him by Parliament, and have been determined to be real estates. They have been considered in that light, and settled as such. 2 *Vez.* 173. So of shares in the New River Company. Of this interest, fines may be levied; and in this case, they are forced to levy fines in all the counties through which the New River runs. 2 *Vez.* 182. But an annuity in fee, not issuing out of lands, though a kind of personalty, goes not to executors, nor is it assets in their hands. It is a personal inheritance descendible to the heir, and even a conditional fee of such personal chattel, still exists, not affected by the statute *de donis*, as a qualified or conditional fee. For an annuity in fee, granted by the king out of *Barbadoes* duties, is not a rent nor realty within the statute of frauds, or statute *de donis;* but being settled on A, and the heirs of his body, is a fee simple conditional at common law; and A, having had issue, may bar possibility of reverter. *Earl of Stafford* v. *Buckley*, 2 *Vez.* 170. Such annuity will not go to executors, by being named as such; unless it is given to them by will. *Ibid.* Not only the grantee of such annuity, but his heir, and his and their grantee, may have a writ of annuity. *Co. Lit.* 144. *b.* 20. *a.* If I,

by my deed, grant an annuity to a man, and the heirs of his body, this only chargeth my person, and concerneth not land, nor savoureth of the realty; this is not within the statute *de donis*, but·he hath a fee conditional, as before the statute, and the grantee, by his grant or release, may bar his heir, as he might have done at the common law; for that in this case, he is not restrained by the statute. *Fitzherbert, tit. annuity*, and *Co. Lit.* 144. From these principles it is evident, that where an annuity is charged on land, it may be real or personal, at the election of the holder. He may proceed against the land, or against the person. If it is out of the coffers, it is personal only as to the remedy; but the property itself is real, as to its descent to the heir. An annuity issuing out of land, may be entailed, but a personal annuity is not the subject of entail. But when a personal annuity is granted, with words of inheritance, it is descendible. It may be granted in fee, Of course, it may as a qualified or conditional fee.

In any view I have been able to take of this subject, interesting as it is to all parties, I am clearly of opinion, that *Andrew*, as surviving *James*, cannot support this action, but that the thing itself and the right of action, is vested in the heirs of *James*.